UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10811-RGS

CHRISTIAN OATES

v.

PETE BUTTIGIEG, SECRETARY OF TRANSPORTATION

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

April 6, 2022

STEARNS, D.J.

Plaintiff Christian Oates brought this action against Pete Buttigieg, the United States Secretary of Transportation, alleging that the Federal Aviation Administration discriminated against him based on disability when it terminated his employment in July of 2018.   Oates brings four counts under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.: wrongful discharge under a disparate treatment theory (Count I); wrongful discharge on the basis of regarding Oates as disabled (Count II); wrongful discharge in retaliation for seeking an accommodation (Count III); and wrongful discharge under a disparate impact theory (Count IV).   Secretary Buttigieg moves for summary judgment on all counts.   For the following reasons, the court will <u>ALLOW</u> the motion.

## BACKGROUND

Christian Oates suffers from attention deficit hyperactivity disorder (ADHD).[1]   On August 21, 2017, the Federal Aviation Administration (FAA) appointed Oates, an electrical engineer, as an Airway Transportation System Specialist (ATSS) at Logan Airport in Boston, Massachusetts.   His appointment was subject to completion of a one-year probationary period. The FAA intended Oates to be trained and certified to work on navigation, communication, and weather systems.

Key to this dispute is Oates's interactions with three other FAA employees: Valerio Castro, David Ashley, and Michael Durham.   Castro was Oates's immediate supervisor while Ashley was Castro's manager and thus, Oates's second-line supervisor.   Castro spoke with Oates about his job performance on several occasions.   According to Secretary Buttigieg, these conversations centered primarily on Oates's outward displays of frustration, lack of training progress, and failure to take direction.   According to Oates, Castro was concerned with the extra time it took Oates to complete trainings and other tasks.

---

1 The parties variously refer to Oates's condition as attention deficit disorder (ADD) and attention deficit hyperactivity disorder (ADHD).   For consistency, the court will refer to the disability as ADHD.

Durham was the FAA's instructor for an Enhanced Terminal Voice Switch (ETVS) course that Oates attended in May and June of 2018. ETVS technology allows for both inter- and intra-facility communication between controllers and communication between controllers and aircraft. Oates and Durham clashed during the ETVS course, though the parties differ as to the reasons. According to the FAA, Oates disrupted the course and attempted to teach his classmates the relevant skills himself. As a result, Durham reported Oates to his supervisor, Anthony Murray, who in turn contacted Ashley. Oates describes Durham's instruction as unfocused and distracting – particularly given Oates's learning disability – because of Durham's tendency to veer off-subject and discuss personal matters. Oates failed a test at the end of the ETVS course, but passed the class.

Toward the end of Oates's probationary period, Castro drafted an evaluation of his performance that recommended to Ashley that Oates be terminated. Among the reasons for Castro's recommendation was Oates's "lack of respect for [his] position, his tenured Peers, and Management," and his "lack of cooperation" which was "perpetuated by his egotistical view of superior intellect." Decl. of Valerio Castro Ex. 2 (Dkt # 28-3) at 7. Castro criticized Oates's "inclination to act as the teacher rather than the student"

during discussions of how to accomplish tasks and his "vocal critique and physical display of frustration with FAA programs and policies." *Id.* Castro also noted that Oates "has shown to need a significant amount of additional time" to absorb information in his FAA training courses. *Id.* On July 6, 2018, Ashley informed Oates that his employment as an ATSS would be terminated with immediate effect. Oates contacted an Equal Employment Opportunity (EEO) counselor within a month and filed a complaint in February of 2019. Following administrative proceedings, Oates instituted litigation in this court.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is genuine where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021), quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "Facts are material when they have the 'potential to affect the outcome of the suit under applicable law.'" *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23

(1st Cir. 2017), quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996).   "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position."   *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).   The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue."   *Id.*

### Count I: Wrongful Discharge – Disparate Treatment

"In disparate treatment cases, plaintiffs bear the ultimate burden of proving that they were victims of intentional discrimination."   *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir. 1995).   The Supreme Court's ruling in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973) provides the framework by which a plaintiff must meet its burden of proof.   *See Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 34 (1st Cir. 2012). A plaintiff must first establish a *prima facie* discrimination claim by showing by a preponderance of the evidence that "1) she was disabled within the meaning of the statute; 2) she was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and 3) the employer took adverse action against her because of the disability." *Rios-Jimenez v. Principi*, 520 F.3d 31, 41 (1st Cir. 2008).   If the plaintiff

makes that *prima facie* showing, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision and to produce credible evidence to show that the reason advanced was the real reason." *Id.* If the defendant establishes a non-discriminatory reason for the adverse employment action, "the burden then shifts back to [the plaintiff] to establish that the proffered reason is pretext intended to conceal discriminatory intent." *Id.*

Secretary Buttigieg argues that the FAA could not have discriminated against Oates because no one at the FAA knew Oates had a disability. Castro, Durham, Ashley, and FAA Human Resources Specialist Ericka Williams each testified that Oates never advised them of his disability. *See* Combined Statement of Facts (CSF) (Dkt # 40) ¶¶ 25-31.

It is "intuitively clear" that an employer "cannot fire an employee 'because of' a disability unless it knows of the disability." *DiBlasi v. Liberty Mut. Grp. Inc.*, 2014 WL 1331056, at *15 (D. Mass. Apr. 3, 2014), quoting *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995). For that reason, "[m]any courts have determined that a plaintiff cannot sustain a *prima facie* case of disability discrimination without showing that an employer had actual or constructive knowledge of the plaintiff's disability."

6

*Boadi v. Ctr. for Human Dev., Inc.*, 239 F. Supp. 3d 333, 350-351 (D. Mass. 2017) (collecting cases); *see also Morisky v. Broward Cty.*, 80 F.3d 445, 448 (11th Cir. 1996).

To establish a *prima facie* disability discrimination claim, an employee must have at least communicated information sufficient to inform his employer that he is disabled within the meaning of federal law.   *See Boadi*, 239 F. Supp. 3d at 351.   Under the Rehabilitation Act, an individual with a disability is someone who "[1] has a physical or mental impairment which substantially limits one or more of such person's major life activities[,] or [2] has a record of such an impairment[,] or [3] is regarded as having such an impairment."   *Rolland v. Potter*, 492 F.3d 45, 47 (1st Cir. 2007) (internal quotation marks omitted).   "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations."   *Diblasi*, 2014 WL 1331056, at *15, quoting *Morisky*, 80 F.3d at 445.

Here, Oates has not established that he adequately notified the FAA of his disability.   This is in part because of his failure to provide evidence regarding when he was diagnosed with ADHD.   At his EEOC deposition, Oates stated that the only person at the FAA whom he told he had ADHD was

Ericka Williams, who processed his intake when he was hired.   Yet he admits that he did not actually know at the time that he had ADHD, having testified that "at the time, you know, I didn't know for a fact that I had ADD, but I was fairly certain.   You know, after so many years, you start to understand what that is, but I -- I couldn't feel 100 percent certain that that's what I had."   Oates Dep. Tr. (Dkt # 28-13) at 13.   While he further testified that although he had known since he was a child that there was "something amiss" or a "disorder," it was not until until "these events" that he was "actually diagnosed with ADD . . . and prescribed medication."   *Id.* at 11.

Oates also testified at his deposition that he told both Durham and Castro that he had a disability, although he did not reveal what that disability was.   When discussing the tension between himself and Durham at the ETVS course, Oates stated that he told Durham, "listen, I need a little help with this. I have this disability."   *Id.* at 83.   He also related a conversation that he and Castro had about his difficulties with the ETVS course as follows: "I'm trying to describe to him -- you know, I think this is like the third time that I'm telling him, you know, I have a -- a -- to take some time to do this. I have a disability."   *Id.* at 25-26.[2]

---

2 Oates also submits excerpts from an EEOC Report of Investigation (ROI) in which he states in writing that he told Castro on a few different

Oates has not submitted evidence showing that the FAA had notice of his ADHD diagnosis.    Oates states that he told only Williams that he had ADHD but concedes that he did not know at the time whether that was true. His disclosures of a "disability" to Castro and Durham are vague, conclusory, and insufficient to notify the FAA that he had an impairment under federal law.    In response to the FAA's evidence that no relevant employee ever knew Oates had an ADHD diagnosis, Oates does not come forward with facts suggesting that he obtained the diagnosis before he was fired.    That Oates may have hypothesized to others that an unspecified disability was causing his difficulties at work is insufficient to allow a reasonable jury to conclude the FAA discriminated against him because of a legally cognizable disability.

Oates's argument that Castro and Ashley knew of his disability during his employment because he filed his EEO Complaint before the close of his probationary period has no merit.    While Oates's probationary period was scheduled to end on August 20, 2018, he was terminated on July 6, 2018,

occasions that he had a "disability" or "learning disability."    *See* ROI (Dkt # 36-1) at 5-10.    Secretary Buttigieg asks the court to strike the ROI as unidentified and unauthenticated.    Oates appears to have identified and authenticated the ROI by affidavit.    *See* Decl. of Laura Ann Raymond, (Raymond Decl.), (Dkt # 36) at 1-2.    The ROI is of limited value, however, both because it contains mere excerpts of a complete document and because it does not add any material information beyond what Oates testified to at his deposition.

and filed his EEO Complaint on August 3, 2018.   *See* CSF ¶¶ 18-19.   Oates's termination became effective July 6, 2018, and he was not an employee of the FAA after that date.   *See* Decl. of Annapurna Balakrisha (Balakrisha Decl.) Ex. 5 (Dkt # 28-5) at 1.   Accordingly, Oates cannot establish a *prima facie* disability discrimination claim.

Even if he could establish a *prima facie* case, Oates's disparate treatment claim also fails because he has not shown that the FAA's stated reason for Oates's dismissal – his poor attitude – was pretexual.   In evaluating pretext, "the court must look to the total package of proof offered by the plaintiff."   *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 174 (1st Cir. 2003).   "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification;" rather, the plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive."   *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991), quoting *Medina-Muñoz*, 896 F.3d at 9.

Oates has not identified any evidence of pretext.   For example, he points to certain statements that Durham and others made about Oates's conduct at the ETVS course, including Durham's description of Oates as a

"tool," Ashley saying "we did not need this kind of individual out representing Boston" because he created a "scene" at the ETVS course, and Castro saying that Oates engaged in an "outburst."   CSF ¶¶ 52-54. Durham's use of the word "tool" is consistent with concerns about behavior and attitude rather than a learning disability.   *See, e.g.*, *Tool*, Merriam-Webster.com Dictionary (2022) (defining "tool" as "a foolish or unlikable person: JERK").   And the fact that Ashley and Castro described Oates as having created a "scene" or an "outburst" despite not being eyewitnesses to the events at the ETVS course shows only that they expressed concern with Oates's conduct at the course as reported by those they spoke to (in Ashley's case, Durham's supervisor, and in Castro's case, Oates himself) – particularly because of Castro's preexisting observations of Oates's behavior.   No reasonable juror could find pretext in these statements.

Oates also complains that Castro went to significant effort to create a record for Oates's termination by taking notes on Oates beginning on his first day of employment and writing a recommendation that he be fired.   But there is no evidence that the motivation behind these undertakings was a desire to terminate Oates because of his ADHD diagnosis.[3]   Oates has not

---

[3] Oates's failure to establish that anyone at the FAA knew of his learning disability also bars any finding of pretext.   *See Tobin v. Liberty*

created a triable issue regarding pretext.

## Count II: Wrongful Discharge – Regarding Plaintiff as Disabled

"A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of the [Rehabilitation Act].*"   *Bailey v. Georgia-Pacific Corp.*, 306 F.3d 1162, 1169 (1st Cir. 2002).   Accordingly, a plaintiff must show that the employer thought the plaintiff's impairment "substantially limited one or more of [his] major life activities."   *McDonough v. Donahoe*, 673 F.3d 41, 49 (1st Cir. 2012).   When the major life activity at issue is the ability to work, a plaintiff must show (1) "that the employer thought that he was impaired in his ability to do the job that he held," and (2) "that the employer regarded him as substantially impaired in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities."   *Ruiz-Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 83 (1st Cir. 2008) (internal quotation marks omitted).

Oates has not shown that FAA management thought he had a disability that limited any major life activity.   As noted, he has only submitted

*Mut. Ins. Co.*, 433 F.3d 100, 106 (1st Cir. 2005).

evidence that he told Williams he had ADHD (but was undiagnosed at the time) and that he told other FAA employees that he was "disabled."   Yet all of these employees, including Williams, deny that they understood Oates to be disabled, and Oates has not produced evidence to the contrary.

The other evidence Oates identifies does not show that his supervisors believed him disabled within the meaning of the Rehabilitation Act.   He points to Durham's comments that Oates was "struggling," and that work took him "several hours" that took another ETVS student "30, 40 minutes," and Castro's assessment that Oates "has shown the need for a significant amount of additional time beyond the course length to absorb the information and translate the equipment theory to practical applications." CSF ¶¶ 62, 64.   These comments show at most that Durham and Castro thought that it took Oates longer than others to absorb training information. They do not show that they inferred, based on these observations, that he had a disability that limited one of his major life activities.   In the same vein, Oates's argument that Castro regarded him as disabled because he "jokingly shared with Mr. Oates that he struggles with his own Obsessive Compulsive Disorder" in an "attempt[] to relate to [Oates]" is belied by the record evidence.   Opp'n (Dkt # 35) at 9.   Oates has not shown that Castro referred

to obsessive compulsive disorder because he thought Oates had a disability.

Further, Oates does not even argue that the FAA regarded him as substantially limited in any specific major life activity. Assuming the life activity at issue is the ability to work, he has not submitted evidence that anyone at the FAA thought that the slow pace of his learning substantially impaired his ability to perform a class of jobs or a broad range of jobs compared to the average person. Oates's "regarded as" claim must therefore fail.

### Count III: Wrongful Discharge – Retaliation

Oates asserts that the FAA fired him in retaliation for seeking an accommodation. "In order to establish a prima facie claim of retaliation, [a plaintiff] must demonstrate that (i) he undertook some protected conduct, (ii) he suffered an adverse employment action, and (iii) that the two were causally linked." *Alvarado v. Donahoe*, 687 F.3d 453, 458 (1st Cir. 2012). The parties agree that seeking an accommodation is protected conduct but differ as to whether Oates has shown that he asked for an accommodation. A request for an accommodation under the Rehabilitation Act must be "sufficiently direct and specific" to provide notice that the employee needs a "special accommodation." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d

6, 23 (1st Cir. 2004) (citation omitted).   "The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation," *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012), and "[t]he employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace," *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001).   It follows that when an employee fails to make an employer aware of a disability, the employee's request for help does not advise the employer of the need for a "*special* accommodation."   *Id.* at 260.

As noted, Oates did not adequately notify the FAA that he had ADHD during his term of employment.   He cannot show, therefore, that any requests for help he made were efforts to notify the FAA of his need for a special accommodation under the Rehabilitation Act.   He first cites to a purported request for an accommodation on page 4 of Exhibit F-7 to the ROI – a page that he did not include in the summary judgment record.   The court will not consider this alleged request.   Next, Oates refers to a series of requests he made in connection with the ETVS course for extra "help," for Durham to "slow down," to "get[] read-ahead materials for the course," and for "more time" to complete a certification exam.   Opp'n at 11-12 (and cited

documents).   Absent evidence that the FAA knew or should have known that Oates had a disability, these were routine requests for help that do not rise to requests for a special accommodation.   *See Reed*, 244 F.3d at 261-262 (employee's request following workplace altercation that she be permitted to walk away from conflicts was not an "accommodation request" where employee never disclosed her mental illness).

Oates's retaliation claim fails for the additional reason that he cannot show pretext.   *See* pp. 10-11, *supra*.   The court will grant summary judgment as to Oates's retaliation claim.

### Count IV: Wrongful Discharge – Disparate Impact

Secretary Buttigieg argues that Oates failed to exhaust administrative remedies with regard to his disparate impact claim.   Disparate treatment and disparate impact theories of discrimination are different: "[d]isparate impact requires proof of employment practices, often facially neutral, which (1) cannot be justified by business necessity and (2) in fact impose harsher burdens on employees who share a protected characteristic, while disparate treatment arises when an employer treats an employee less favorably because of" a protected characteristic.   *Smith v. City of Bos.*, 2013 WL 3874733, at *3 (D. Mass. July 23, 2013).   Accordingly, "an administrative

charge raising one theory generally does not exhaust the other." *Rodriguez v. United States*, 852 F.3d 67, 80-81 (1st Cir. 2017); *see also Smith*, 2013 WL 3874733, at *3 ("a complaint alleging disparate treatment only exhausts administrative remedies as to a disparate impact claim if it challenges a facially neutral employment practice.").

Oates's EEO complaint and its attached demand letter do not identify any FAA policies that imposed burdens on employees with disabilities.   The demand letter does not point to any policy and summarizes Oates's claim as follows: "The FAA, through its conduct leading up to termination, lack of training, lack of genuine concern and care, and in ultimately terminating Mr. Oates' employment, has demonstrated . . . animus toward [Oates's] intellectual disability."   Balakrisha Decl. Ex. 11 at 10-11.   This is a disparate treatment claim.   Oates's EEO declaration similarly raises allegations that the FAA subjected Oates to disparate treatment when Oates "asked several times over for reasonable accommodations of more time from my supervisors . . . and I was mocked and told it wasn't necessary."   Raymond Decl. Ex. O at 4.   The claim that the Department of Transportation's Office of Civil Rights accepted for investigation was, "[w]ere you subjected to discrimination and/or harassment (non-sexual) based on a disability when

on July 6, 2018, you received a letter of termination from your job as an [ATSS]."   CSF ¶ 24.   This clearly evokes a disparate treatment claim, not a disparate impact claim.

Oates effectively concedes that he did not exhaust his disparate impact claim, arguing that he raised it administratively by alleging, "Plaintiff's FAA supervisors instituted a facially neutral policy by ignoring Plaintiff's repeated requests for additional preparation time or study materials to succeed in his training courses and ultimately his job candidacy."   Opp'n at 17-18.   Yet any failure to provide Oates with the time and materials he needed is not a "facially neutral policy" – it is disparate treatment.   The record is clear that Oates did not administratively exhaust his disparate impact claim.

Alternatively, even if Oates had exhausted his disparate impact claim, he has not provided any evidence that could support the claim now.   The summary judgment record is bereft of evidence of any employment practices that had a disparate impact on employees with disabilities.   Summary judgment will therefore enter on all counts.

## ORDER

For the following reasons, Secretary Buttigieg's motion for summary judgment is <u>ALLOWED</u>.   The Clerk will enter judgment for Secretary

Buttigieg and close the case.

                              SO ORDERED.

                              /s/ Richard G. Stearns
                              UNITED STATES DISTRICT JUDGE